**In re Marie B. KING, Debtor.**

**AMERICAN EXPRESS TRAVEL RELATED SERVICES CO., INC., Plaintiff,**

v.

**Marie B. KING, Defendant.**

**Bankruptcy No. 91–11658 K.
Adv. No. 91–1248 K.**

United States Bankruptcy Court,
W.D. New York.

Jan. 21, 1992.

Richard I. Leff, Buffalo, N.Y., for plaintiff.

Barry H. Sternberg, Buffalo, N.Y., for defendant.

### DECISION AND ORDER

MICHAEL J. KAPLAN, Bankruptcy Judge.

This is a request by a creditor for default judgment against the debtor in a 11 U.S.C.

§ 523(a)(2) dischargeability action wherein the creditor seeks $10,086.83 in principal, $1,260.85 in pre-judgment interest, $120.00 in costs, and also $1,702.15 in attorney's fees. The attorney's fees are the sole subject of this decision, and their awardability has been raised *sua sponte* by the Court.

This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I).

I find that attorney fees are not awardable to a successful plaintiff in an action under 11 U.S.C. § 523(a)(2).

Under the Bankruptcy Act of 1898 it was well established that when non-dischargeability of a debt is premised on false pretenses or representations, it would be excepted from discharge only to the extent that the creditor relied on the misrepresentation. Thus in the case of *In re Danns*, 558 F.2d 114 (2d Cir.1977), it was held that if a debtor borrows money on the basis of a truthful financial statement and subsequently obtains an additional loan on the basis of a false financial statement, only the "new money" would be excepted from discharge even if the old loan is rolled over into the second. The rationale was that the lender had relied on the false representations only with regard to the "new money."

It can be seen that there are two aspects to the decision in that case. The first is that the false financial statement rendered by the debtor in connection with the request for additional funds does not "taint" the outstanding balance on the old loan. The second aspect of the holding is that it is only the portion of the debt that is tainted by fraud that may be excepted from discharge. In the Bankruptcy Reform Act of 1978 Congress, by statute, overruled the first aspect of the *Danns* holding. 11 U.S.C. § 523(a)(2) renders non-dischargeable an "extension" or "renewal" of an obligation that is obtained on the basis of fraud.

However, Congress continued, and even reinforced, the second aspect of the *Danns* holding. Section 523(a)(2) excepts obligations incurred through fraud only "to the extent obtained" by false pretenses, false representation, actual fraud, or use of a false financial statement "on which the creditor ... reasonably relied."

This is abundantly clear from the language of the statute itself. Nonetheless, before the Court today is a request by a creditor who has prevailed (through default) in an action under § 523(a)(2), for attorney's fees in the amount prescribed by the loan agreement giving rise to the debt—15% of the unpaid balance.

Two circuits have adopted the view that counsel is entitled to the fees sought. But this Court must respectfully disagree with that result. Both in the case of *In re Martin*, 761 F.2d 1163 (6th Cir.1985) and in the case of *Transouth Financial Corporation of Florida v. Johnson*, 931 F.2d 1505 (11th Cir.1991), it was stated that attorney's fees, when provided for by contract, are part of the "debt" that is excepted from discharge, and that 11 U.S.C. § 523(d), providing attorney's fees only for a consumer debtor who has prevailed in a dischargeability action, applies only in the absence of a contract right to attorney's fees. Consequently, a contract right to attorney's fees in favor of a prevailing creditor, it was held, is not contrary to section 523(d).

In my view this reasoning cannot be reconciled with either the statute or its legislative history. At page 131 of House Report No. 95–595, 95th Congress, first session (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6092, the Legislative history states, after discussing at length the operation of section 523(a)(2) (discussed more fully later in this decision), "The *bill* does not award the creditor attorney's fees if the creditor prevails. Though such a balance might seem fair at first blush, such a provision would restore the balance back in favor of the creditor by inducing debtors to settle no matter what the merits of their cases. In addition, the creditor is generally better able to bear the costs of a litigation than a bankrupt debtor, and it is likely that a creditor's attorney's fees would be substantially higher than a debtor's, putting an additional disincentive on the debtor to litigate." I here emphasize the fact that Congress stated that "the bill," as opposed

to section 523(d), "does not award the creditor attorney's fees." When one more fully examines the legislative history discussion leading up to that statement, in light of the enacted language of the statute, one sees that section 523(d) was intended to be the exclusive basis upon which attorney's fees might be awarded in a section 523(a)(2) action and that a contractual provision in favor of creditors will not avail.

In the legislative history page cited above and the two prior pages of that report, the "extent" to which a fraud-tainted debt is excepted from discharge is explained in detail, and in examining it one must bear in mind that section 523(a)(2) excepts from a discharge "any debt ... for money, property, services or an extension, renewal, or refinancing of credit, *to the extent obtained,* by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ... [or] use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit *reasonably relied;* and (iv) that the debtor caused to be made or published with intent to deceive...." 11 U.S.C. § 523(a)(2). [Emphasis added]

Congress explained that "the premise of the exception to discharge is that a creditor that extended credit based on misinformation or fraudulent information transmitted by the debtor should be protected." Congress then explains that this exception, which had existed under the Bankruptcy Act of 1898, "has led to abuse in consumer cases, and has frustrated the fresh start goal of the bankruptcy discharge." It explained that consumer finance companies frequently elicited an incomplete list of obligations from a loan applicant specifically for later use if bankruptcy ensued. It further noted that the creditor often has other sources of information, such as credit bureau reports, to verify the accuracy of the information provided by the debtor. H.R. 95–595, 95th Congress, 1st Sess. (1977) at p. 130, U.S.Code Cong. & Admin.News 1978, p. 6091.

Most tellingly, Congress explains that "Creditor practices in this area have been so strong that the Bankruptcy Commission recommended that the false financial statement exception to discharge be eliminated for consumer debts." However, rather than eliminating the exception because of the abuses by creditors, Congress opted "to balance the scales more fairly in this area." Thus, Congress explained "HR 8200 adopts a compromise. The false financial statement exception is retained ... [I]f the debtor prevails, however, the creditor is taxed costs and attorney's fees, and may be taxed any actual pecuniary damages, such as loss of a day's work, that the debtor might have suffered as a result of the litigation." (The provision contained in HR 8200 for pecuniary damages such as loss of a day's pay was deleted in the final compromise which became the Bankruptcy Reform Act in 1978, but the balance of section 523(d) was retained). Congress then states "the present pressure on the honest debtor to settle in order to avoid attorney's fees in litigation over a creditor-induced false statement is eliminated. The creditor is protected from dishonest debtors by the continuance of the exception to discharge." Id. at 131, U.S.Code Cong. & Admin.News 1978, p. 6092.

The statements are made immediately prior to the statement quoted above—"the Bill does not award the creditor attorney's fees if the creditor prevails." It is hard to imagine a clearer statement from Congress.

The rationale that attorney's fees that are provided for by contract are part of the "debt" that is excepted from discharge when a creditor prevails in section 523(a)(2) litigation seems also to ignore clear language of the statute. As quoted above, the statute does not except from discharge "any debt ... to the extent obtained, by [fraud]." It excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by [fraud]." 11 U.S.C. § 523(a)(2). It is that which the debtor obtains through use of fraud that is

excepted from discharge, not everything that the creditor may have suffered. Furthermore, when a creditor incurs attorney's fees for the collection of a debt it does not do so in "reliance" upon false representations, particularly when the fees are incurred prosecuting a section 523(a)(2) cause of action in Bankruptcy Court, at which point the alleged misrepresentations are known to the creditor.

The element of reliance is also a matter to which Congress paid thorough attention in the legislative history to section 523(a)(2). As indicated at the outset of this Decision, the Court *In re Danns* had held that when a creditor rolls an old note, not tainted by fraud, over into a new note that is tainted by fraud, only the new money is excepted from discharge because there had been no reliance upon any false statements in the granting of the original loan. Congress expressly changed that aspect of the *Danns* result. It stated that "The amount of the debt made nondischargeable on account of a false financial statement is not limited to 'new value' extended when a loan is rolled over ... where the original financial statement is made under nonfraudulent conditions and the entire loan in addition to new money is advanced under a subsequent false financial statement, the entire loan is made under fraudulent conditions. This rule is sound as a matter of policy because the creditor relies to his detriment with respect to the entire amount advanced under the false financial statement. Legal rights with respect to the amount previously advanced may be altered; interest rates may be changed, maturity dates may be extended, and legal remedies may be foregone in reliance on the new false financial statement." *Id.* at 129–130, U.S.Code Cong. & Admin.News 1978, pp. 6090, 6091. It was pointed out in the House debate on the compromise bill which became the Reform Act that "in many cases, a creditor is required by state law to refinance existing credit on which there has been no default." [1]

However, that same Congressional record excerpt also states "if the creditor does not forfeit remedies or otherwise rely to his detriment on a false financial statement with respect to existing credit, then an extension, renewal or refinancing of such credit is non-dischargeable only to the extent of the new money advanced; ... if an existing loan is in default or the creditor otherwise reasonably relies to his detriment on a false financial statement with regard to an existing loan, then the entire debt is non-dischargeable under section 523(a)(2)(B). *This codifies the reasoning expressed by the Second Circuit in In re Danns, 558 F.2d 114 (2nd Cir.1977).* [Emphasis added.]

Thus it is clear that although the Reform Act overruled the Second Circuit insofar as that Circuit might have not foreseen all ways in which the old loan might be tainted by fraud in connection with the rollover, Congress expressly "codified" the Circuit's reasoning under which the exception from discharge is limited to that which the debtor obtained by fraud.

This seems to be set forth clearly enough in the statute itself. To the extent that it might be thought to be ambiguous, the stated intent to adopt reasoning of the Second Circuit renders it appropriate to consult the language of the case. Thus in *Danns* 558 F.2d 114 (2d Cir.1977), the Court stated that "the language of section 17(a)(2) bars discharge only of 'liabilities for obtaining' extensions of [sic] renewals of credit 'in reliance upon a materially false statement'; this strongly implies that the creditor should be entitled to bar discharge only of that portion of his loan as was obtained fraudulently. There is nothing in the legislative history of the 1960 amendments to indicate a congressional intent that a bankrupt should be penalized for more than simply the consequences of his fraud. Nor does it seem equitable for a bankrupt to be deprived of discharge on all his indebtedness to a particular creditor simply because a small portion of it was procured dishonestly. Accordingly, since

---

**1.** 124 Congressional Record H 11096 (Daily Edition September 28, 1978).

exceptions to discharge are to be narrowly construed, see *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915), we read section 17(a)(2) as barring discharge only to the extent that the creditor could actually have relied upon the debtor's misrepresentation." *In re Danns*, 558 F.2d 114, 116 (2d Cir.1977) (footnotes omitted).

In so holding, the Second Circuit stated "We think the proper construction of section 17(a)(2) is unmistakable." *Id.* at 116. Were it not for the decisions of the Sixth and Eleventh Circuits with regard to the issue currently at bar, I would have made the same statement regarding the construction of 11 U.S.C. § 523(a)(2) and § 523(d).[2]

Let default judgment be entered against the debtor Marie B. King in this adversary proceeding in the amount of principal, interest and costs only, not to include counsel fees.

SO ORDERED.

**2.** See the case of *In re Fulwiler*, 624 F.2d 908 (9th Cir.1980), which may lend some support to today's decision. Also dealing with section 17 of the Bankruptcy Act of 1898, that Court was confronted with a request by a debtor who had successfully defended a dischargeability action premised on an allegedly false financial statement in a loan transaction that was evidenced by a note containing a standard attorney's fees clause whereby the borrower was obligated to pay such reasonable attorney's fees and costs as might be incurred in the collection of the note. The case arose in the state of Oregon. Under Oregon State Law, an attorney's fees clause is reciprocally binding regardless of the actual wording of the clause. Thus the debtor sought to rely on State Law for the proposition that he, having successfully defended the dischargeability action, was entitled to the benefit of the attorney's fees clause contained in the underlying note. The Ninth Circuit rejected this argument. It cited the Supreme Court decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and the Bankruptcy Court decision in the case of *In re Huff*, 1 B.R. 354 (Bkrtcy.D.Utah 1979) for the proposition that section 17(a)(2) "created a purely federal cause of action designed to implement the policies of the former Bankruptcy Act. Though elements of proof associated with both tort and contract actions may have been present in many non-dischargeability proceedings, Section 17 fell into neither classification.... [I]n any event, the award of attorney's fees in a bankruptcy proceeding should rest upon a firmer foundation than the semantical characterization of a particular proceeding" [as "tort" or "contract"]. .... [W]e concur with the weight of authority in this area, and hold that attorney's fees were awardable to successful bankrupts under section 17 only where the creditor brought the proceeding in bad faith or to harass the bankrupt. There appears to be no other basis on which such an award could be founded. .... [I]n the absence

of finding that the creditor in this case brought the section 17 proceeding in bad faith or vexatiously or with the intent to harass Fulwiler, we find that no basis to award attorney's fees existed." 624 F.2d 908, 910 (9th Cir.1980) (footnotes omitted)

The fact that the Reform Act specifically overruled the Fulwiler result by giving a consumer debtor a right to attorney's fees does not undercut the Court's view that dischargeability proceedings are uniquely federal in nature, and its unexpressed, but implicit view, that the "American Rule" should apply. In the latter regard, see the strongly-worded dissent from the Eleventh Circuit's holding in *Transouth*, cited above. More distinctly in point is the District Court decision in the case of *In re Barr*, 54 B.R. 922 (D.Oregon 1984), wherein the District Court applied the *Fulwiler* decision to reverse a Bankruptcy Court decision awarding attorney's fees to a successful creditor. The Court stated that the $400 debt for attorney's fees "did not result from services obtained by the debtor, nor were the services given in reliance upon any fraud or misrepresentation by the debtor ... Section 523(a)(2)(A)'s requirement of reliance always remains as a limitation on which debts are subject to nondischargeability.... Although in one sense the attorney's fees debt was 'caused' by the debtor's writing the NSF checks, clearly the creditor was not relying on any fraudulent representation of the debtor in authorizing the services underlying the attorney's fee debt. Therefore the attorney's fee award is not nondischargeable." *Id.* at 925 (footnote omitted) (citation omitted). The District Court stated that the *Fulwiler* case indicates that the awarding of attorney's fees in a non-dischargeability proceeding is a matter of Federal Law, and that absent some specific Federal Statutory authorization (such as section 523(d)) or bad faith, attorney's fees are not available in section 523(a)(2) actions.