**In re John A. MAURICE, Debtor.**

**John F. DORNIK, Plaintiff,**

v.

**John A. MAURICE, Defendant.**

**Bankruptcy No. 89 B 11962.
Adv. No. 90 A 0101.**

United States Bankruptcy Court,
N.D. Illinois.

March 31, 1992.

Kenneth A. Kozel, LaSalle, Ill., for John A. Maurice, debtor/defendant.

Gerald M. Hunter, Gerald M. Hunter, Ltd., Oglesby, Ill., for John F. Dornik, plaintiff.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of John F. Dornik ("Dornik") pursuant to 11 U.S.C. § 523(a)(2) and (a)(6) for a determination of the dischargeability of a certain debt owed him by the debtor/defendant John A. Maurice (the "Debtor"), together with Dornik's motion for sanctions. For the reasons set forth below, the Court, having considered all the pleadings and evidence adduced at trial by way of testimony and exhibits, does hereby find the debt nondischargeable. The motion for sanctions is allowed.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this adversary proceeding and motion pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(I) and (O).

## II. FACTS AND BACKGROUND

From July 1, 1978 to July 15, 1982, the parties engaged in a partnership for automobile and other vehicular repairs. In August 1982, Dornik sued the Debtor in the Circuit Court of LaSalle County, Illinois (the "circuit court") for dissolution of the partnership and an accounting of related assets and liabilities. In October 1987, the circuit court awarded a judgment against the Debtor in favor of Dornik. It found in relevant part that the Debtor used a $20,000.00 capital contribution made by Dornik to pay personal expenses after the money had been deposited in the Debtor's personal bank account. The Debtor appealed and a cross-appeal was filed by Dornik from a reduction ordered by the circuit court by reason of a capital contribution to the partnership made by the Debtor. In November 1988, the Illinois Appellate Court for the Third District (the "appellate court") affirmed most of the circuit court's ruling, but reversed the reduction, thereby imposing a $20,000.00 judgment against the Debtor. The Debtor thereafter sought leave to appeal to the Illinois Supreme Court. That appeal was denied resulting in a mandate issuing from the appellate court to the circuit court in May 1989.

The Debtor filed a Chapter 13 petition on July 20, 1989. The case was subsequently converted to Chapter 7 on August 28, 1989. An order was thereafter entered on December 4, 1989, setting February 26, 1990, as the last date for the filing of dischargeability complaints under section 523. On February 15, 1990, Dornik filed the instant adversary proceeding against the Debtor asserting that the Debtor's actions, as determined by the circuit and appellate courts, constitute fraudulent conduct viola-

tive of section 523(a)(2), as well as willful and malicious conversion under section 523(a)(6). The Debtor denies those contentions in his answer and raises several affirmative defenses. He asserts that this adversary proceeding is barred by the five-year statute of limitation established by Ill.Rev.Stat. ch. 110, para. 13–205 (1989). In addition, the Debtor argues that this proceeding is barred by the doctrines of res judicata and collateral estoppel.

The bankruptcy case and this adversary proceeding were originally assigned to Judge David H. Coar, who conducted most of the pretrial hearings. He entered his Opinions denying the Debtor's motions to dismiss and a demand for jury trial on November 19, 1990 and April 1, 1991, respectively. On that latter date, he entered a second Prehearing Order concerning further proceedings in this matter. This order has never been vacated. Judge Coar's Prehearing Order, among other things, required the parties to exchange and file with the Court at least fourteen days prior to trial, copies of all exhibits to be offered at trial, along with a witness list and a brief summary of the witnesses' testimony. The Prehearing Order also required objections to the opponent's exhibits and witnesses to be filed at least seven days before trial, along with any proposed findings of fact and conclusions of law and any pretrial brief. The Prehearing Order further provided for sanctions for failure of a party to comply therewith, including preclusion from introducing any exhibits into evidence for failure to timely comply. It further stated that failure to object to the opponent's exhibits could constitute a waiver of objection. Among other potential sanctions included therein was the barring of any unendorsed or unlisted witnesses.

Judge Coar originally set this matter for trial for May 6, 1991, but for various reasons, continued same and reset the trial several times to May 13, 1991; August 26, 1991; October 28, 1991; and March 6, 1992. On November 15, 1991, Dornik's attorney filed pleadings in substantial compliance with the Prehearing Order which included a witness list, a brief summary of the witnesses' testimony and six exhibits. No compliance with the Prehearing Order was ever filed by the Debtor's attorney. He argues that the Prehearing Order lost its validity because of the continuances granted by Judge Coar.

Effective January 1, 1992, the Court's call for the counties of Will, Grundy, Kendall and LaSalle was reassigned from Judge Coar to the undersigned. This Judge denied all further requests for continuance of the scheduled trial. On March 6, 1992, Dornik and his attorney appeared at the scheduled time and place of trial. The Debtor's attorney appeared without the Debtor or any witnesses. The Court admitted all of Dornik's exhibits into evidence at the commencement of trial in accordance with the terms of the Prehearing Order. The Debtor's attorney orally represented that Judge Coar's Prehearing Order had been vacated, thus excusing his lack of compliance therewith. The Court then reviewed the adversary proceeding file and docket sheet and advised Debtor's counsel of same. Neither the file nor the docket sheet contained an order entered by Judge Coar vacating the Prehearing Order.

Debtor's counsel objected to the admissibility of the exhibits proffered by Dornik on hearsay and relevancy grounds, which the Court overruled. The exhibits (Plaintiff's Exhibits 1–6) consisted of certified, authenticated copies of the prior circuit court and appellate court opinions, orders and mandate. Dornik was the only witness who testified and the substance of his abbreviated testimony was that the prior state court judgment entered in his favor was unpaid to date. Dornik filed the instant motion for sanctions for the Debtor's failure to comply with the Prehearing Order, seeking to bar him from introducing any exhibits or presenting any testimony, or in the alternative, to enter judgment by default in his favor. The Court gave both parties leave to submit written closing arguments and post-trial briefs and took the matter under advisement.

## III. DISCUSSION

### A. MOTION FOR SANCTIONS

Dornik's motion for sanctions seeks to bar evidence or enter a directed finding and

judgment in his favor. The former relief is allowed. The Debtor's attorney appeared without any witnesses at trial and chose not to cross-examine Dornik. In accord with the terms of the Prehearing Order, the Court refused to consider, or make part of the record, any of the Debtor's documentary evidence consisting of various exhibits not previously furnished.

The Prehearing Order was based upon Federal Rule of Bankruptcy Procedure 7016 which applies Federal Rule of Civil Procedure 16. In relevant part, Rule 16(e) provides that "[a]fter any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P. 16(e). Moreover, Rule 16(f) makes express provision for sanctions for failure to comply with a pretrial order. It states in relevant part:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f).

Rule 37(b)(2)(B), in turn, contemplates the sanction of refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence. Additionally, Rule 37(b)(2)(C) includes the alternative sanction of rendering a judgment of default against the disobedient party. *See also United States of America v. Dimucci*, 110 F.R.D. 263 (N.D.Ill.1986), *aff'd*, 879 F.2d 1488 (7th Cir.1989) (default judgment imposed for failure to comply with court ordered discovery).

█ From review of the record, including the docket sheet, it is patently clear that the Debtor's attorney orally misrepresented to the Court that Judge Coar's Prehearing Order had been vacated. No such order vacating the Prehearing Order is contained in the file or reflected on the docket. Only orders reduced to writing on a separate document as required by Bankruptcy Rule 9021, and subsequently entered on the docket pursuant to Bankruptcy Rule 5003(a) are effective. The argument made by the Debtor's lawyer to the effect that the Prehearing Order lost its validity once Judge Coar continued the original trial date is unsupported by any citation of authority and is disingenuous. The Debtor's lawyer is fortunate that his oral misrepresentation to the Court was not made in a filed pleading that he signed, which would have triggered sanctions under Bankruptcy Rule 9011.

Although the Court could exercise its discretion under Federal Rules of Civil Procedure 37 and 16 and impose attorney's fees and expenses for failure to comply with the Prehearing Order, exclusion from consideration of any of the documentary exhibits referred to in counsel's belated remarks is sufficient. The record is completely devoid of any attempt by the Debtor or his attorney to substantially comply with the Prehearing Order. Rather, in the Debtor's post-trial memorandum, he improperly makes a proffer of testimonial and documentary evidence, not offered at trial or submitted in substantial compliance with the Prehearing Order. Same will not be considered. Otherwise, the Prehearing Order would be effectively nullified and the Debtor's failure to appear and testify, subject to cross-examination, would be rewarded by a consideration of matters post-trial which should have been submitted pre-trial

and offered into evidence at trial. The Court will not condone such tactics.

It is more appropriate for the Court to consider the merits of the complaint in light of the evidence which consists of the detailed findings of the circuit and appellate courts. The Court properly admitted same pursuant to the terms of the Prehearing Order. The entire gist of the complaint is based upon such findings. Hence, same are highly relevant. Federal Rule of Evidence 402 establishes a policy of admitting relevant evidence and excluding irrelevant evidence, with certain exceptions. As defined by Federal Rule of Evidence 401, the instant documents are relevant evidence having a tendency to make the existence of any fact that is of consequence to the determination of this matter more probable than it would be without such evidence.

■ The hearsay objection was not well founded and thus, properly overruled. Bankruptcy Rule 9017 provides that the Federal Rules of Evidence apply in cases under the Bankruptcy Code, and expressly incorporates Federal Rules of Civil Procedure 44. Rule 44(a)(1) in turn provides in relevant part:

> An official record kept within the United States, or any state ... or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by the officer's deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of the officer's office.

Fed.R.Civ.P. 44(a)(1).

Dornik's exhibits were offered for a hearsay purpose to establish the truth of the matters asserted therein, which included the Illinois courts' factual findings concerning the Debtor. *See* Federal Rule of Evidence 801(c). Although references therein to the Debtor's admissions made in the state court pleadings are not defined hearsay for Federal Rule of Evidence purposes (by virtue of the exclusion from the definition of hearsay of admissions by party opponents as provided in Federal Rule of Evidence 801(d)(2)), the balance of the state court factual findings are admissible under the public records exception to the federal hearsay rules. *See* Federal Rule of Evidence 803(8)(C). The certified and authenticated copies of the opinions, orders and mandate consist of public records containing factual findings by those courts. Such documents embody their acts as judicial officers made pursuant to the authority granted them by state law. Such factual findings may also contain and include factual conclusions. *See generally Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 505 F.Supp. 1125 (E.D.Pa. 1980); *United States v. Arias*, 575 F.2d 253 (9th Cir.1978), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978).

No challenge was raised showing that the copies of such findings are unreliable. To the contrary, they are official court records, open to public inspection and scrutiny. The circuit court found that the Debtor had represented to Dornik that the money was to be used as a capital contribution to the partnership, but instead, he misappropriated the $20,000.00 and diverted same to his personal use. Such findings were affirmed by the appellate court and form the substantial bases of both counts of the instant complaint. This Court should give full faith and credit to those decisions pursuant to 28 U.S.C. § 1738. Admission of such evidence also accommodates the principle of comity between the state and federal judicial systems.

## B. DISCHARGEABILITY STANDARDS IN THE SEVENTH CIRCUIT

■ The party seeking to establish an exception to discharge of a debt bears the burden of proof. *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983). In the Seventh Circuit, the former standard of proof in dischargeability actions involving section

523(a)(2) and (a)(6) was one of "clear and convincing evidence." *In re Bogstad,* 779 F.2d 370, 373 (7th Cir.1985). Recently, however, the United States Supreme Court has indicated that a lower standard of proof applies to all exceptions to discharge under section 523, that being a mere "preponderance of the evidence." *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The discharge provisions of section 523 are construed strictly against the creditor and liberally in favor of the Debtor. *In re Pochel,* 64 B.R. 82, 84 (Bankr.C.D.Ill.1986).

### C. 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ Although not argued by Dornik in his post-trial pleadings, section 523(a)(2) will be discussed because affirmatively pleaded, but not voluntarily dismissed as an alternative ground for relief. In order to except the Debtor's debt under this section, Dornik must establish three elements: (1) the Debtor obtained the $20,000.00 through representations either knowingly false or made with such reckless disregard for the truth as to constitute willful misrepresentation; (2) the Debtor possessed an actual intent to defraud; and (3) Dornik actually and reasonably relied upon the false representation. *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985); *In re Garman,* 643 F.2d 1252, 1256 (7th Cir.1980).

■ From a review of the evidence, it is clear that the circuit court found that after the Debtor received the $20,000.00, he treated it as his property and used it to pay his personal debts. The circuit court also found that Dornik gave the Debtor the

money with the understanding that it was a capital contribution to their partnership. The appellate court additionally noted Dornik's testimony that he understood the money would be put into the partnership and would only be used if the business came upon hard times. Given these facts, the Court can reasonably find that the Debtor obtained the money from Dornik through misrepresentation by telling him that the money was to be used for the partnership when, in fact, he used same for his personal expenses. Thus, the Court finds that the Debtor obtained the $20,-000.00 through representations that were either knowingly false or made with such reckless disregard for the truth so as to constitute willful misrepresentation.

Similarly, the Court can reasonably find that the Debtor made such misrepresentation with the actual intent to deceive Dornik. The Debtor's act of depositing into his personal bank account the sum earmarked for capital contribution to the partnership allows the Court to find that he intentionally deceived Dornik for his personal benefit. Therefore, the second element has been met.

The third element has also been shown. The Debtor was entrusted with the funds at a time when the parties were partners. It was reasonable for Dornik to rely upon the Debtor's representations of what use the funds were to be put and trust the Debtor to whom he owed and was owed fiduciary duties as a partner under Illinois law. *See generally* Ill.Rev.Stat. ch. 106½, ¶ 40(b) (1989); *Borys v. Rudd,* 207 Ill. App.3d 610, 620, 152 Ill.Dec. 623, 629, 566 N.E.2d 310, 316 (1st Dist.1990), *cert. denied,* 139 Ill.2d 593, 159 Ill.Dec. 104, 575 N.E.2d 911 (1991). Accordingly, the Court will allow the relief sought under section 523(a)(2)(A).

### D. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides:

(a) a discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

In order for a debt to be held non-dischargeable under section 523(a)(6), the creditor has the burden of proving that the injury resulted from an act that was both willful and malicious. *Kimzey,* 761 F.2d at 424; *United Bank of Southgate v. Nelson,* 35 B.R. 766, 768 (N.D.Ill.1983); *In re Hopkins,* 82 B.R. 952, 953 (Bankr.N.D.Ill.1988). The term "willful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause for excuse even in the absence of personal hatred, spite or ill will." *In re Condict,* 71 B.R. 485, 487 (N.D.Ill.1987); *In re Meyer,* 7 B.R. 932, 933 (Bankr.N.D.Ill.1981). The debtor need not act with ill will or malevolent purpose towards the injured party. *In re Hallahan,* 78 B.R. 547, 550 (Bankr. C.D.Ill.1987), *aff'd,* 113 B.R. 975 (C.D.Ill. 1990), *aff'd,* 936 F.2d 1496 (7th Cir.1991). Thus, "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." *See* 3 *Collier on Bankruptcy,* ¶ 523.16 at 523–129 (15th ed. 1992). The phrase "willful and malicious injury" encompasses "willful and malicious conversion." *In re Meyer,* 7 B.R. at 933. Implied or constructive malice will be found if the debtor injures the creditor by an intentional or deliberate act, or the debtor commits this act knowing it will harm the creditor's interest in property. *See In re Cerar,* 97 B.R. 447, 452 (C.D.Ill. 1989).

The findings of the circuit and appellate courts show that the Debtor converted to his personal use Dornik's capital contribution to the partnership. Consequently, the Court can reasonably infer and finds that the Debtor knew that Dornik would be injured by his misappropriation and conversion of same. The Debtor's expending the money constitutes conversion because it was an unauthorized act by which Dornik was deprived of the use of the property. *See* 35 Illinois Law and Practice, *Trover and Conversion,* §§ 2, 3 and 7 (1958 and

1991 Supp.) and cases cited therein. Business persons are presumed to know that harm will result from conversion of a party's property, and a debtor who actively participates in such a conversion is personally liable. *In re Nicoll,* 42 B.R. 87, 90 (Bankr.N.D.Ill.1984). The Debtor's conversion was not innocent or technical. The fair market value of the converted collateral is the appropriate measure of damages for conversion. *In re Iaquinta,* 98 B.R. 919, 925 (Bankr.N.D.Ill.1989); *In re Krause,* 44 B.R. 159, 163 (Bankr.N.D.Ill. 1984). Accordingly, the total $20,000.00 plus statutory interest (five percent per annum) accrues from the time of conversion where there has been an unreasonable and vexatious delay of payment to date of judgment, and at the judgment rate (nine percent per annum) from the date judgment was entered by the circuit court. Ill. Rev.Stat. ch. 110, paras. 2–1303 and 12–109 (1989); Ill.Rev.Stat. ch. 17, para. 6402 (1989).

## E. RECOVERY OF ATTORNEY'S FEES AND EXPENSES

Dornik seeks recovery of his attorney's fees and other miscellaneous unidentified expenses. Section 523(d) allows for assessment and taxation of a debtor's reasonable attorney's fee against a losing creditor for dischargeability adversary proceedings involving a consumer debt under section 523(a)(2). Otherwise, most federal courts in awarding attorney's fees have generally applied what has been referred to as the "American Rule," which provides that in cases that are based upon or involving federal law, attorney's fees are not allowable absent a statutory basis or aggravated conduct justifying imposition of same. Dornik's pleaded causes of action are founded on a federal statute. Because the remedy created by the Bankruptcy Code does not give Dornik as a creditor a statutory right to attorney's fees, the Court declines to tax the Debtor with same. This result is consistent with the majority of other courts on this issue. *See In re Johnson,* 756 F.2d 738, 741 (9th Cir.1985), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *In re King,* 135 B.R. 734

(Bankr.W.D.N.Y.1992); *In re Penney,* 76 B.R. 160, 162 (Bankr.N.D.Cal.1987).

## F. THE STATUTE OF LIMITATIONS AFFIRMATIVE DEFENSE

■ The Debtor asserts that the five year statute of limitations pursuant to Ill. Rev.Stat. ch. 110, para. 13–205 (1989), bars any relief to Dornik. That state statute of limitations is inapplicable and not controlling on a federal bankruptcy court proceeding to determine dischargeability under section 523. Federal Rule of Bankruptcy Procedure 4007(c) sets the deadline for filing complaints under section 523(c) and provides in pertinent part:

(c) A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).

Fed.R.Bankr.P. 4007(c).

The bankruptcy case was converted from Chapter 13 to Chapter 7 on August 28, 1989. Thereafter, a new section 341 meeting of creditors was set for December 28, 1989, and the limitations period began running under Bankruptcy Rule 4007(c). Pursuant to that same order, a dischargeability filing cutoff date was established of February 26, 1990. The instant complaint was filed on February 15, 1990, well within the time frame set forth in the order and in compliance with Bankruptcy Rule 4007(c). Hence, this affirmative defense is not well founded.

## G. AFFIRMATIVE DEFENSES OF RES JUDICATA AND COLLATERAL ESTOPPEL

■ The Debtor contends that because causes of action for fraud and willful and malicious conversion were not alleged in the prior state court action, same are barred under the doctrines of res judicata and collateral estoppel. The United States Supreme Court has stated that the doctrine of res judicata is inapplicable to a bankruptcy court's consideration of debt dischargeability. *Brown v. Felsen,* 442 U.S. 127, 138–139, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979). As to the narrower doctrine of collateral estoppel, however, the Supreme Court noted that it would apply if a state court, "in the course of adjudicating a state-law question ... should determine factual issues using standards identical to those of [the Bankruptcy Code].... *Id.* at 139, 99 S.Ct. at 2213. Under *Brown,* although the ultimate issue of dischargeability for purposes of section 523(a)(2) and (a)(6) is to be determined by the bankruptcy court, collateral estoppel would prevent relitigation of issues previously determined in the state court proceedings if: (1) the state courts, in determining those issues, used standards identical to those in the Bankruptcy Code; and (2) the criteria necessary for collateral estoppel to apply were satisfied. *See also Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987); *In re Roemer,* 76 B.R. 126, 128 (Bankr.S.D.Ill.1987). Collateral estoppel generally prevents a party from relitigating an issue that the party has litigated and lost. *Ferrell v. Pierce,* 785 F.2d 1372, 1384 (7th Cir.1986).

■ In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical. *Appley v. West,* 832 F.2d 1021, 1025 (7th Cir.1987); *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir.1986). The party asserting collateral estoppel has the burden of establishing which issues were actually determined in his favor in the prior action. *Jones v. Alton,* 757 F.2d 878, 885 (7th Cir.1985). As noted in *Klingman v. Levinson,* the bankruptcy court may look behind a state court judgment to determine whether a debt is dischargeable. 831 F.2d at 1295.

■ In the case at bar, the issues of dischargeability under section 523(a)(2) and (a)(6) were not litigated in the state court. Therefore, the state court factual determinations of the Debtor's diversion and conversion of the capital contribution do not preclude this trial on the dischargeability

issues unique to section 523. All of the elements for application of collateral estoppel are not present. Both parties to this adversary proceeding were the parties to the prior state court proceedings, and some issues were actually litigated and decided on the merits. Moreover, resolution of such issues in the state court were necessary to the results. Nevertheless, not all issues were identical to those in this matter. The state court action dealt with the accounting and dissolution of a partnership, whereas the instant adversary proceeding focuses on the dischargeability determinations under section 523. The Debtor, as the party affirmatively invoking collateral estoppel, has not met his burden of establishing which, if any, issues were actually determined in his favor in the prior state court action. Thus, the affirmative defenses of res judicata and collateral estoppel are not well taken.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby finds the debt owed to Dornik in the amount of $20,000.00, plus statutory interest, nondischargeable pursuant to section 523(a)(2)(A) and (a)(6). In addition, the Court allows the motion for sanctions.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.