In re Frances Cutri McDONALD, Debtor.

BANK ONE COLUMBUS, N.A., Plaintiff,

v.

Frances Cutri McDONALD, Defendant.

Bankruptcy No. 93–21037SR.
Adv. No. 93–2199.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 21, 1994.

---

**214**

Gregg M. Feinberg, Allentown, PA.

Emil L. Iannelli, Southampton, PA.

Frederick J. Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

This adversary proceeding is before the Court on the complaint of Bank One Columbus, N.A. ("Bank One") the issuer of a credit card to the defendant-debtor, Frances Cutri McDonald ("the Debtor"), seeking to except its claim from discharge pursuant to 11 U.S.C. 523(a)(2)(A), (a)(2)(B), and (a)(2)(C). Bank One also requests costs and attorney's fees incurred in pursuit of this action. A hearing was held on August 25, 1994.

**Facts**

In December 1992, Bank One offered a pre-approved credit card with a $5,000 credit limit to the Debtor through the mail. The Debtor accepted Bank One's offer and requested the credit card by completing and returning a "reservation certificate" to Bank One. Bank One mailed the credit card to the Debtor on January 25, 1993, along with a Credit Card Account Cardholder Agreement which set forth the terms under which the Debtor was to use the credit card. The Debtor initially used the credit card to obtain two cash advances totalling $2,700, $1,700 at one Meridian Bank location and $1,000 at a second Meridian Bank location, on the same day, February 1, 1993. Subsequent cash advances were taken by the Debtor, as follows: $400 on February 16, 1993, $100 on March 1, 1993, and $150 on March 13, 1993. The Debtor also used the credit card on approximately 16 other occasions to purchase various goods and services during the same period.

The Debtor did not make her initial payment to Bank One which was due on March 11, 1993, and, by taking the $150 cash advance on March 13, 1993, exceeded her approved credit limit. The Debtor has not made any payment to Bank One. She filed a bankruptcy petition on April 2, 1993. In addition to the Debtor's approximately $5,000 scheduled obligation to Bank One, the Debtor's scheduled credit card obligations in her bankruptcy total $12,911.64, as follows: $834.51, Bradlees; $7,000 Corestates Bank; $1,101.27, Discover Card; $1,500, Chemical Bank Mastercard; $635, Sears; $1,016.65, Signet Bank; $824.21, Strawbridge and Clothier. The Debtor's monthly income totaled $415 during the period of her Bank One credit card use, $215 from welfare and $200 child support. She was also receiving food stamps. Her monthly expenses totaled approximately $2,000. The Debtor testified that she was living with her boyfriend, and he had been making up the deficit in her monthly budget at the time she completed the pre-approved credit card application. It is undisputed that the boyfriend had moved

out of her apartment and was not providing financial assistance to the Debtor at the time she received the credit card.

The Debtor testified that she had used the credit card for her "survival," because she was unable to afford basic necessities or provide for her son. The Debtor has joint custody of her son. He lives with her on Friday through Monday. She testified further that at the time she incurred the credit card obligation she was actively seeking employment and believed she would be able to repay Bank One.

## Discussion

Bank One is relying on 11 U.S.C. § 523(a)(2)(A) in seeking to have its claim declared nondischargeable. Section 523(a)(2)(A) provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.  .  .  .  .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A) (West 1993).

■■■ A creditor challenging the discharge of a particular debt under section 523(a)(2)(A) [1], must prove that the debt should not be discharged by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The creditor may establish that the debt should be excepted from discharge by proving each of the following elements:

(1) that the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention of and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damages as a

proximate result of the representations have been being made.

*In re Bergman*, 103 B.R. 660, 671 (Bankr. E.D.Pa.1989), quoting *In re Stelweck*, 86 B.R. 833, 846 (Bankr.E.D.Pa.1988), *aff'd, sub nom. United States v. Stelweck*, 108 B.R. 488 (E.D.Pa.1989).

Two principal schools of thought have emerged in the cases analyzing credit card use as fraudulent under section 523(a)(2)(A). The minority view is that the card credit issuer assumes the risk of use or abuse, up to the credit limit. The Court has reviewed the cases following this "assumption of the risk" rationale. *See, e.g., In re Ward*, 857 F.2d 1082 (6th Cir.1988); *First Nat'l Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983); *In re Cirineo*, 110 B.R. 754 (Bankr.E.D.Pa.1990).

Under the assumption of the risk theory, a credit cardholder does not, by merely using the credit card, make any representation to the issuer. Rather, the cardholder makes a false representation to the issuer only when revocation of the card is communicated to the cardholder and the cardholder continues to use the card, or when the cardholder continues to use the card even though the user knows or should know the charges are in excess of the credit limit granted.

■■■ The Court declines to adopt the assumption of the risk theory, because, among other reasons, that approach "places credit card issuers in a virtually impossible position with respect to credit card charges made prior to revocation of the card." *Citibank South Dakota v. Dougherty (In re Dougherty)*, 84 B.R. 653, 656 (9th Cir. BAP 1988); *In re Preece*, 125 B.R. 474 (Bankr.W.D.Tex. 1991); *see also, In re Sigrist*, 163 B.R. 940 (Bankr.W.D.N.Y.1994). Moreover, the most frequently cited case adopting the assumption of the risk theory, *Roddenberry*, held that any and all charges, incurred after the fact of revocation of a card by the issuer is communicated to the debtor are nondischargeable. Unfortunately, that case is frequently cited for the converse; i.e., that all charges incurred before communication of

---

1. Based on Bank One's pretrial statement and the evidence it adduced at trial, Bank One has apparently abandoned its reliance on sections 523(a)(2)(B) and (a)(2)(C).

revocation are dischargeable. *See, e.g., In re Rivera,* 151 B.R. 602, 604 (Bankr.M.D.Fla. 1993); *In re Blackburn,* 68 B.R. 870, 879 (Bankr.N.D.Ind.1987); *In re Shrader,* 55 B.R. 608, 612 (Bankr.W.D.Va.1985). Actually, the *Roddenberry* Court recognized that the underlying facts in any case needed to be analyzed carefully to determine if there had been fraud. This Court concurs fully with those courts that have adopted a fact-based approach.

■ The majority of bankruptcy courts have held that the act of using a credit card, by itself, carries two implied representations: (1) that the debtor has the intent to repay the credit card debt; and (2) that the debtor has the ability to repay the debt. *In re Branch,* 158 B.R. 475, 477 (Bankr.W.D.Mo. 1993); *In re Preece,* 125 B.R. at 477; *In re Hinman,* 120 B.R. 1018 (Bankr.D.N.D.1990). If a credit card issuer establishes with the requisite degree of proof that at the time the debtor used the card, he knew or should have known that he would be unable to repay the obligations incurred, that constitutes false pretenses, a false representation or actual fraud. *In re Pursley,* 158 B.R. 664 (Bankr. N.D.Ohio 1993); *In re Meeks,* 139 B.R. 559 (Bankr.M.D.Fla.1992); *In re Hansbury,* 128 B.R. 320 (Bankr.D.Mass.1991); *In re Hinman,* 120 B.R. at 1021 (Bankr.D.N.D.1990); *In re Lipsey,* 41 B.R. 255 (Bankr.E.D.Pa. 1984). Proof that at the time the debtor used the card, he knew or should have known that he would be unable to repay the obligations incurred, satisfies the creditor's burden with respect to the first three elements outlined above. *In re Branch,* 158 B.R. at 477.

■ Various factors have been utilized by this Court, as well as many other bankruptcy courts, in determining whether a credit card user had the requisite intent to deceive, and specifically that he knew or should have known that he would be unable to repay the credit card obligations incurred. Those factors are:

1.) the length of time between the charges made and the filing of the bankruptcy;

2.) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3.) the number of charges made;

4.) the amount of the charges;

5.) the financial condition of the debtor at the time the charges were made; and

6.) whether the charges were above the credit limit of the account.

*In re Cirineo,* 110 B.R. at 758, citing, among other cases, *In re Lipsey,* 41 B.R. at 258.

Several other courts have also considered the following additional factors:

7.) did the debtor make multiple charges on the same day;

8.) whether or not the debtor was employed;

9.) the debtor's prospects for employment;

10.) the financial sophistication of the debtor;

11.) whether there was a sudden change in the debtor's buying habits; and

12.) whether the purchases were made for luxuries or necessities.

*See In re Dougherty,* 84 B.R. at 657; *In re Faulk,* 69 B.R. 743, 757 (Bankr.N.D.Ind. 1986); *In re Carpenter,* 53 B.R. 724, 729 (Bankr.N.D.Ga.1985).

■ In the instant case, the Debtor began charging on her credit card within days of, if not immediately upon, receiving the card, and incurred an obligation of over $5,000, which was over the Debtor's credit limit, in a 41 day period. At the time, the Debtor was unemployed and her monthly expenses exceeded her total monthly income by more than $1,500. The Debtor obviously did not have income available to satisfy her credit card payment. Nevertheless, the Debtor testified that she had used the credit card for her "survival," because she was unable to afford basic necessities or provide for her son. She testified further that at the time she incurred the credit card obligation she was actively seeking employment and believed she would be able to repay Bank One.

The Court did not find her testimony to be credible. The Debtor's actual use of the card is not consistent with her testimony, that she use the card for "survival." Her scheduled monthly expenses, including rent, electricity and heating fuel, telephone, cable, food, car

lease payment, auto insurance, and a modest budget for transportation and recreation, total $1967. The Debtor obtained a total of $2,700 [2] through cash advances on the same day [3], February 1, 1993, and took an additional $650 in cash advances by March 13, 1993. The Debtor's cash advances are in excess of her scheduled monthly expenses for that 41 day period, and the Debtor received $415 per month during that same time, as well as food stamps. The Debtor also made 16 purchases on the Bank One card, many of which apparently were for non-essential items.

■ Intent to repay requires some factual underpinnings which lead a person to a degree of certainty that he or she would have the ability to repay. *Chemical Bank v. Clagg (In re Clagg)*, 150 B.R. 697, 698 (Bankr.C.D.Ill.1993). The Debtor, however, did not have any job prospects at the time she incurred her obligation to Bank One. She admitted that she had not been working in her field for 14 years, and acknowledged that she did not have any funding for "re-education." The Debtor could not have reasonably expected to obtain a job which would provide sufficient income to allow her to meet her monthly expenses and satisfy her approximately $17,000 of credit card obligations. For all these reasons, Bank One has established that at the time the Debtor used the Bank One card, she knew or should have known that she would be unable to repay the obligations incurred. Accordingly, Bank One has satisfied its burden with respect to the first three elements outlined above.

■■ The fourth element to be proven is that the creditor relied on the debtor's repre-

sentations. Reasonable reliance is present if the creditor's actual conduct was consistent with normal business practices in the industry, and if the creditor, upon the particular facts, acted with ordinary diligence. *In re Pursley*, 158 B.R. at 669.

A Bank One representative testified that Bank One obtained the Debtor's name by purchasing a "list[ ] of names based on some pre-set criteria, generally based on the area of income, the average income and various other [factors]." The representative also testified that a credit bureau report was reviewed before the solicitation offering the Debtor a credit card was mailed. The Bank One representative was aware of the Debtor's car lease, and that the Debtor had possessed three or four department store charge cards for several years, apparently with no negative credit history. The representative credibly testified that the credit bureau's report did not disclose that the Debtor had various other bank credit cards [4].

Bank One's procedures appear to be consistent with normal business practices. Moreover, the Court believes Bank One acted with ordinary diligence. Accordingly, Bank One has established that it relied on the Debtor's representations.

The final element which must be established is proximate cause. Bank One has proven that its loss is a direct consequence of the Debtor's use of the credit cards. Accordingly, the Bank One's claim arising from the Debtor's use of the card is not dischargeable.

**Attorney's fees**

■■ Without citation to any authority, Bank One is seeking an award of attorney's fees and costs. It cites a provision in the

---

**2.** The Debtor did not provide a satisfactory explanation as to the disposition of the initial $1700 cash advance. She denied, that the moneys were used to obtain bankruptcy counsel. In fact, she was unable, or unwilling, to answer when she did seek bankruptcy advice. The Debtor also said she could not remember if and when she had applied for or received credit cards from Signet Bank, Chemical Bank, or CoreStates Bank, even though her bankruptcy schedules list those credit card companies as holders of unsecured claims.

**3.** As already discussed, bankruptcy courts frequently consider whether a debtor makes multi-

ple charges on the same day in determining whether a debtor acted knowing that he would be unable to repay his obligations. Unfortunately, Bank One did not ask the Debtor why she obtained the additional $1,000 cash advance on the same day, or for what purpose.

**4.** As already discussed, the Debtor testified that she could not remember if or when she received a Chemical Bank, Signet Bank, or CoreStates Bank credit card. The Debtor may have applied for and received one or more of those cards around the same time.

Credit Card Account Cardholder Agreement which provides for the payment of fees and costs if legal action is required to collect the debt. Once again, two lines of cases have developed analyzing whether creditors are entitled to an award of attorney's fees in bankruptcy proceedings.

In *In re Martin*, 761 F.2d 1163 (6th Cir. 1985), the Sixth Circuit considered the issue of whether a prevailing creditor under section 523(a)(2), could be allowed costs and attorney's fees incurred, and held that creditor's are entitled to recover attorney's fees if they have a contractual right to them valid under state law. The court recognized that the Bankruptcy Code explicitly grants fees and costs only to prevailing debtors:

> (d) If a creditor requests a determination of dischargeability of consumer debt under section (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fees for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d) (West 1993).

The court also recognized that the Congressional failure to award attorney's fees to creditor's was not accidental, and stated "[c]ongress enacted section 523(d) out of concern that creditors were using the threat of litigation to induce consumer debtors to settle for reduced sums, even though the debtors in many cases were entitled to discharge." *In re Martin*, 761 F.2d at 1168.

Nevertheless, the Sixth Circuit thought that section 523(d) did not prevent the award of attorney's fees since, among other reasons, "there is simply no hint of that intention in the text of the statute [5]." *Id.* The Fifth and Eleventh Circuit Court of Appeals have followed the Sixth Circuit's holding, and have awarded attorney's fees to creditors with a contractual right to them valid under state law. *See Jordan v. Southeast Nat'l Bank*, 927 F.2d 221 (5th Cir.1991) (relying heavily on *Martin*); *Transouth Financial Corp of Florida v. Johnson*, 931 F.2d 1505 (11th Cir. 1991) (same).

In the Ninth Circuit, a creditor relying on section 523(a)(2), and prevailing is not entitled to attorney's fees. *In re Fobian*, 951 F.2d 1149 (9th Cir.1991), *cert. denied sub nom. Western Farm Credit Bank v. Fobian*, — U.S. ——, 112 S.Ct. 3031, 120 L.Ed.2d 902 (1992); *see also, Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975) (award of attorney's fees in federal litigation reversed as contrary to the "American Rule"). Attorney's fees may be recovered in actions based on federal bankruptcy statutes only when the statute so provides, regardless of whether there is a contract providing for attorney's fees. *In re Bonnifield*, 154 B.R. 743 (Bankr.N.D.Cal. 1993), citing *In re Fobian*, 951 F.2d at 1153; *In re Johnson*, 756 F.2d 738 (9th Cir.1985).

While the Ninth Circuit's approach has some appeal, this Court would not resolve this issue against Bank One solely on that reasoning alone. The Court believes, however, that Congress clearly intended to preclude creditors from recovering attorneys' fees when it enacted section 523(d). Con-

---

**5.** When interpreting a statute, a court's analysis should be consistent with the actual language of the statute, and should be consistent with the plain meaning of the statutory language. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). The rationale that attorney's fees that are provided for by contract are part of the "debt" that is excepted from discharge when a creditor prevails in section 523(a)(2) litigation seems also to ignore the clear language of the statute. The statute excepts from discharge any debt "for property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by ... fraud." 11 U.S.C. § 523(a)(2)(A). It is that which the debtor obtains through the use of fraud that is excepted from discharge, not everything that the creditor may have suffered. *In re King*, 135 B.R. 734, 735–36 (Bankr.W.D.N.Y.1992). When a creditor incurs attorney's fees for the collection of a debt it does not do so in "reliance" upon false representations, particularly when the fees are incurred prosecuting a section 523(a)(2) cause of action in bankruptcy court, at which point the alleged misrepresentations are known to the creditor. *Id.*

gress must have been aware of the existence of boilerplate language requiring borrowers to assume the costs of collection, including attorney's fees, upon default. In virtually any loan agreement or other arrangement between debtors and creditors, creditors provide in boilerplate language for attorney's fees in the event of default. The legislative history of section 523, provides that:

> In order to balance the scales more fairly in this area, H.R. 8200 adopts a compromise . . .
>
> *The bill does not award the creditor attorney's fees if the creditor prevails.* Though such balance may seem fair at first blush, such a favor would restore the balance back in favor of the creditor by inducing debtors to settle no matter what the merits of their cases. In addition, the creditor is generally better able to bear the costs of the litigation than a bankrupt debtor, and it is likely that a creditor's attorney's fees would be substantially higher than a debtor's, putting an additional disincentive on the debtor to litigate.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 131 (1977), *reprinted in,* 1978 Cong U.S.Cong. & Ad.News 5963, 6092. (emphasis added).

Congress stated that "the bill," as opposed to section 523(d), "does not award the creditor attorney's fees." *Id.; see also, In re King,* 135 B.R. at 735–36. It is hard to imagine a clearer statement from Congress. In light of the clear Congressional intent to disallow attorney's fees as an element of a debt owed to a prevailing creditor in a dischargeability proceeding, this Court will not allow creditors to circumvent the clear intent of Congress by relying on state law contrac-

tual rights[6]. To do otherwise would effectively emasculate the provisions of section 523, and the compromise negotiated in enacting that section.

An Order consistent with the foregoing conclusions accompanies this opinion.

### ORDER

**AND NOW,** this 21st day of October, 1994, after a trial on August 25, 1994, to consider the complaint of Bank One Columbus, N.A. ("Bank One"), it is hereby:

**ORDERED,** as follows:

1.) Judgment is entered in favor of Bank One in part only.

2.) The indebtedness of the Debtor to Bank One is not discharged.

3.) Bank One's requests for attorney's fees is denied.

---

6. In *In re Martin,* the debtors argued that the court's holding would undercut congressional intention. The court reasoned that section 523(d) gives prevailing debtors rights to attorney's fees, where they had none before. And, prevailing creditors have no statutory right to attorney's fees, and if they have a contractual right, it must be assumed they gave value for that right at the time credit was advanced. *In re Martin,* 761 F.2d at 1168, citing *In re United Merchants & Mfrs., Inc.,* 674 F.2d 134, 137 (2d Cir.1982). *In re United Merchants* involved a $45,000,000 unsecured loan. In discussing whether collection costs, including attorney's fees were recoverable by the unsecured creditor, the Second Circuit said "[w]hen equally sophisticated parties negotiate a loan agreement that provides for the recovery of collection costs upon default, courts should presume, absent a clear showing to the contrary, that the creditor gave value, in the form of a contract term favorable to the debtor or otherwise, in exchange for the collections provision." *Id.* It is difficult to imagine how the Sixth Circuit found this language applicable in the context of small consumer loan. Without deciding the issue, the Court notes that on the facts of the instant case, where the Debtor received the cardholder agreement containing the attorney's fees provisions with the pre-approved card, it is difficult to imagine what value, if any, Bank One gave in exchange for the attorney's fees provision.